STERLING INDUSTRIES, INC., Appellant, *v.* BALL BEARING PEN CORPORATION et al., Respondents.

First Department, March 29, 1948.

*David P. Siegel* for appellant.

*Bernard A. Saslow* of counsel (*Abraham N. Geller* and *Philip Kazon* with him on the brief; *Geller & Saslow,* attorneys), for respondents.

CALLAHAN, J.   The plaintiff has brought this action to recover damages for breach of contract by the defendant Ball Bearing Pen Corporation allegedly induced by wrongful interference on the part of the defendants Murray Morin and Sidney Manne.

The principal issue on this appeal concerns the right of the president of a corporation to institute suit on its behalf in a case where the board of directors is deadlocked on the question of bringing the action.

The plaintiff is a domestic corporation organized in December, 1946, with an authorized capital stock of 100 shares of common stock without par value.   The parties interested in its formation comprised two groups consisting of (1) Messrs. Albert E. Mid-

dleman, Murray Shindel and A. B. Golub, and (2) representatives of the defendant Ball Bearing Pen Corporation. For the purpose of allocation to each of the controlling groups the capital stock of the corporation was divided into two classes with equal voting rights. It was made up of 60 shares belonging to Class A and 40 shares of Class B common stock. The former was issued 20 shares to Albert E. Middleman and 20 shares to Allan H. Shindel (nominee of Murray Shindel), with the remaining 20 shares undistributed. The Class B common stock was fully issued for a nominal sum to Robert B. Morin and George J. Manne, each of whom became the owner of 20 shares allegedly without payment of the consideration for his stockholdings.

Pursuant to the provisions of its charter and by-laws the plaintiff was governed by a board of directors composed of four members. The holders of the Class A common stock voting as a class elected one-half of the directorate, and the holders of the Class B common shares also voting as a class chose the remaining directors in accordance with the plan of organization. At all times since incorporation the plaintiff's board of directors has consisted of its four stockholders aforesaid. The corporate officers have likewise at all times been Albert E. Middleman as president and treasurer, and Allan H. Shindel in the capacity of vice-president and secretary.

The by-laws of the plaintiff vest its management and control in the board of directors. A majority thereof constitutes a quorum for the transaction of business, and the board of directors may act only by majority vote of its members. Though the by-laws describe the powers and duties of the corporate officers at some length, they contain no general or specific reference to any authority of the president to institute litigation. The powers of the president in respect to certain matters are subject to the approval of the board of directors, and no officer or agent of the corporation is empowered to contract any debt or liability in its name or on its behalf except as expressly prescribed by the by-laws. The president, however, is clothed with the authority to sign and make all contracts and agreements in the name of the corporation.

It also seems that the two groups instrumental in the plaintiff's creation contemplated the possibility of a duality of interests arising from contractual or other relationship with persons, firms and corporations in which any of the directors might personally be interested, and the plaintiff's charter provides that no contract or transaction of the corporation shall be affected or invalidated by reason of such interest on the part of any director.

On or about February 28, 1947, the plaintiff's president gave written notice of a special meeting of the board of directors to vote on the advisability of instituting· suit or other proceedings against the defendant Ball Bearing Pen Corporation for alleged breach of a contract granting an exclusive agency for the sale and distribution of ball point pens manufactured by the corporate defendant. It is claimed that this breach of contract was brought about by the wrongful inducement of the individual defendants, who are the father and brother of Robert B. Morin and George J. Manne, respectively, comprising the Class B stockholders. At this meeting held on March 12, 1947, the directors Albert E. Middleman and Allan H. Shindel voted in favor of suit, and the directors Robert B. Morin and George J. Manne cast their votes against legal proceedings. Despite this impasse on the question of suit the president retained an attorney to institute the present action on behalf and in the name of the corporation.

The defendants Ball Bearing Pen Corporation and Sidney Manne moved to set aside the service of the summons and complaint in this action as unauthorized on the ground that a majority of the plaintiff's board of directors had not approved the hiring of an attorney and the institution of suit. The defendant Murray Morin had not been served with process and had not appeared in the action at the time of the making of the motion by his codefendants.

The motion is supported by affidavits narrating the facts with respect to the meeting of the board of directors of the plaintiff corporation and the existence of a deadlock on the question of bringing the action. The plan of organization is said to indicate a purpose on the part of those interested in the formation of the corporation to have the two groups holding the Class A and B common stock equally represented and with neither in control. The provisions of the by-laws are stressed to show that a majority of the board of directors is required to support corporate action. In addition, the existence of any contract or breach by the defendant corporation is also denied.

In opposition to the motion it is claimed that the plaintiff possesses a meritorious cause of action and that the suit is critical and vital to its interests and for the corporate benefit. It is also asserted that the directors opposing the action were placed on the plaintiff's board of directors at the instance of persons having an interest in the defendant corporation and thus represent dual and hostile interests by reason of which they should have disqualified themselves from voting on the proposed litigation.

The Special Term granted the motion and vacated the service of the summons and complaint in this action. It considered that the prima facie right of the president to institute suit on behalf of the plaintiff had been dissipated and no longer existed by reason of his failure to obtain majority approval for the action at the meeting of the board of directors called for the purpose of voting on the advisability of legal proceedings against the corporate defendant. It was also held that there was an insufficient showing of evidentiary facts to support any claim that the suit was critical and vital to the interests of the corporation.

It is our opinion that the prima facie authority of the plaintiff's president to retain an attorney and bring this action in its name should be recognized under the peculiar circumstances of this case, and that the service of process should not be vacated at the instance of the defendants whose objection to the suit is based on the opposition of corporate directors representing or allied with their interests.

It appears that the principal purpose in forming the plaintiff corporation was the promotion and sale of the products manufactured by the corporate defendant. The existence of a contract granting an exclusive agency for this purpose is alleged in the complaint, and that this agreement has been breached. This is enough to establish that the suit, if justified in fact, vitally concerns the plaintiff and affects its interests in respect to a substantial asset. We do not think that the merits or sufficiency of the factual basis for bringing the action should be considered at this time.

It is conceded that the law recognizes the prima facie power vested in the president of a corporation to engage an attorney and cause the bringing of an action in its name in a proper case. The president has authority in the first instance to do anything which the board of directors could authorize or ratify on behalf of the corporation. The defendants, however, say that where as in this case the management of the corporate affairs is vested in a board of directors, this presumptive authority is rebutted by proof that a majority of the board of directors failed to support a vote authorizing the suit. Of course, it can hardly be gainsaid that the president would have no right to act contrary to the decision of a majority of the board of directors affirmatively voting against the bringing of an action in a particular case. (See, however, *Recamier Mfg. Co.* v. *Seymour*, 15 Daly 245.) Nor is there much doubt that ordinarily a **majority vote of the board of directors is necessary for cor-**

porate action. However, in our opinion it does not necessarily follow from these premises that the president of a corporation confronted with a deadlock in the board of directors may not exercise his presumptive authority and take affirmative action in the way of suit vital to the corporate interests and welfare.

While we do not consider it necessary to decide whether the directors of the plaintiff corporation representing the Class B stockholders were legally disqualified by reason of their relationship to the defendants in this case, we may readily visualize a situation involving such disqualification. If the president of a corporation in such circumstances were without power to take appropriate steps by way of legal proceedings in protecting its vital interests, it might well be that the corporate interests would suffer from inaction.

Strangely enough, in this State there appears to be a dearth of judicial precedent on the precise question involved in this case. However, there is authority elsewhere that the power to institute suit on behalf of a corporation for the purpose of preserving its interests inheres in the president in the face of a deadlock in the board of directors. Thus, in *Elblum Holding Corp.* v. *Mintz* (120 N. J. L. 604) the plaintiff was a real estate holding company. Its stock was held equally by two families who were at cross-purposes with each other. The president caused an action to be brought against the treasurer individually for rent due from certain property owned by the plaintiff. The board of directors had not authorized the suit. The by-laws did not expressly sanction the action taken by the president. In opposition to a motion to dismiss the suit for want of authority it was shown that the failure to pay the rent had seriously hampered and prejudiced the corporation. The impossibility of securing corporate sanction for the action was alleged. The defendant asserted that to permit such a suit would create discord in the internal management of the company and urged that the only proper forum to enforce the claim was in a Court of Chancery. In overruling the objections of the defendant the court said (p. 609):

" We think that these arguments lack persuasion. Without, of course, trenching upon the equitable jurisdiction which might have been invoked, we are merely concerned with a simple suit brought at law to enforce a rent claim allegedly due the corporation. It is difficult to perceive what greater strife and discord in the internal affairs of the instant corporation can be created by this suit than that which already obtains by reason of the

existing deadlock. How the stockholders or creditors will be injured is not made to appear. Costs incident to litigation (including counsel fees) will follow whether the litigation is in the equity or the law branch of our jurisprudence.

" We are fully in accord with the views of the learned justice who observed that ' what we have here is a case where the president, on the face of things, has undertaken to institute the obvious and proper step to protect the interests of his corporation; and where the defendant, by the same token, has undertaken to prejudice those very interests in favor of his own.' "

The *Elblum* case (*supra*) has been approved as reaching a practical and desirable result. (See Note, 48 Yale L. J. 1082.) This note discusses "The Role of the Corporation in Litigation Caused by Factional Disputes Among Directors ", and the problem in relation to its pragmatic aspects is aptly stated as follows (p. 1082): " Factionalism within a corporation is ordinarily settled by the practical device of majority rule. The will of the majority, within limits, is the will of the corporation. A situation may arise, however, where no majority vote can be marshalled, where directors or stockholders are divided, evenly and hopelessly, on a controversial corporate matter. Immediate action by the management may be necessary to preserve vital interests. Yet the power to act is vitiated by the existing deadlock. Dictates of practical necessity may then be allowed to override stricter considerations of agency, and authorization of a corporate agent to sue be found where none in fact exists." (See, also, *Ludia E. Pinkham Medicine Co.* v. *Gove,* 298 Mass. 53; *Regal Cleaners & Dyers* v. *Merlis,* 274 F. 915; Note, 52 Harv. L. Rev. 322.)

Although we have found no controlling authority in this State involving a state of facts identical with the situation in the case at bar, the problem created by a deadlock between groups of corporate directors has been considered on a few occasions under somewhat related or analagous circumstances.

The question of authorization for the maintenance of suit in the face of an equal division among the directors of a corporation was involved in *Voron & Chait, Inc.,* v. *Benguiat* (162 N. Y. S. 974). In that case the plaintiff was in the course of dissolution, and an action to recover the balance of an account owing to the corporation was brought in its name upon the instructions of the secretary and treasurer apparently against the wishes of the president. The court in holding the suit to be unauthorized said (p. 975): "It is impossible to hold that the

bringing of this action was authorized by the corporation. As the secretary and treasurer only own 50 per cent. of the stock, and as they constituted but two of the four members of the board of directors, certainly neither the stockholders nor the board of directors have given proper authorization, and if such authority is held to exist in the officers of a corporation, certainly the officer in whom it would be found would be the president as the chief executive officer, and not the secretary or the treasurer."

The same court, however, under similar circumstances in the later case of *Warwick Sportswear Co.* v. *Simons* (13 N. Y. S. 2d 321) reversed a judgment dismissing a complaint for lack of authorization to bring the action and held: " Upon its face the complaint states a cause of action in favor of plaintiff-corporation against the defendant for the conversion by defendant of plaintiff's property, and the action should not be dismissed solely on the ground of the lack of any authority from the two-man board of directors (one of whom is the defendant, and the other the corporation's president) to bring suit."

In the *Matter of Bernheimer* (43 N. Y. S. 2d 300, affd. 266 App. Div. 868) the president of a corporation had engaged an attorney to represent it in condemnation proceedings involving the taking of its property. The board of directors was deadlocked on the hiring of the attorney, and one half of the directors had protested his employment. Nevertheless, the court upheld the authority of the president to retain counsel and the right of the attorney so employed to an allowance for his services. Of course, the *Bernheimer* case was not strictly a plaintiff's action. The attorney was engaged not to commence litigation, but for the protection of the corporate interests in a proceeding to acquire title to property constituting the main asset of a realty company.

The defendants suggest that the proper remedy in the circumstances is the institution of a stockholders' derivative suit by the Class A stockholders alleged to be the only persons who stand to gain by bringing the action in its present form. It is said that a proper protection of the interests of the plaintiff corporation and its stockholders requires that the former be relieved of the burden and attendant expense of prosecuting this action. The principal difference between a derivative suit and the present action as urged by the defendants would have relation to the payment of costs and expenses involved in the litigation. In our view this factor is not deemed to be controlling. The right to a trial by jury in this action at law is

a valuable right entitled to as much consideration as possible liability for costs. The selection of a particular remedy or form of action is to be sustained so long as it is authorized and appropriate to the end sought to be achieved.

We consider that the nature of the litigation and the relationship existing between the defendants and those directors opposing suit are important factors that weigh heavily in favor of upholding the action taken by the president of the plaintiff corporation in this case.

In conclusion, it seems appropriate to say that we find it unnecessary to pass beyond the precise facts of this case for the purpose of our decision. For this reason we do not discuss those cases where the board of directors of a corporation are not evenly split over a corporate matter as to which the opposing directors have a divided loyalty, or those cases where the proposed action is not vital to the corporate interests.

The order appealed from should be reversed, with $20 costs and disbursements to the appellant, and the motion to vacate the summons and complaint in this action should be denied.

Peck, P. J. (dissenting). While the president of a corporation has presumptive authority to institute an action in behalf of the corporation, that authority is subject to the control of the board of directors and may be negatived, as it was here, by the president submitting his recommendation to the board and failing to carry it. A motion not carried is lost. To hold that the president may nevertheless proceed on his own to commit the corporation by legal action is to vest the president with a weighted and deciding vote. I know of no sanction in law for such power. There might be critical occasions in corporate affairs where time of action is of the essence and no adequate alternative to action by the president exists, when his claim to authority to institute suit should be upheld. But no critical condition is suggested here and an equally available alternative exists in a stockholders' action.

The majority opinion recognizes the unusual authority it accords the president and is careful to confine it, for the present, to the peculiar circumstances of this case, where the objection to the suit is based on the opposition of directors allied with the defendants' interests. If that should be the controlling consideration, it should not matter whether the president happens to be on one side or the other, but suit in the name of the corporation at the behest of half of the directors should always be authorized against a defendant in which the other directors

are interested. The president may as likely be in the latter camp as the former. The decision should not turn on the happenstance that he is on the affirmative.

But, further, it seems to me that the very circumstances existing here point to the desirability of denying the president authority and relegating the parties to a stockholders' action. The litigation is a difference between evenly divided interests within the corporation. One group of stockholders is taking up cudgels against another group. Such litigation is peculiarly appropriate to a stockholders' action. That procedure is as available, prompt and efficacious as a law action. It seems preferable in the circumstances. One side should not be entitled to maintain an action in the name and at the expense of the corporation simply because the president happens to be allied with its interests.

The order appealed from should be affirmed.

COHN and VAN VOORHIS, JJ., concur with CALLAHAN, J.; PECK, P. J., dissents in opinion, in which SHIENTAG, J., concurs.

Order reversed, with $20 costs and disbursements to the appellant and the motion to vacate the summons and complaint denied. Settle order on notice.