**FANCHON & MARCO, Inc., et al. v. PARAMOUNT PICTURES, Inc., et al.**

United States District Court
S. D. New York.

June 11, 1952.

John Harlan Amen, New York City (Russell Hardy, Washington, D. C., of counsel), for plaintiffs.

Simpson, Thacher & Bartlett, New York City, for defendant and defendant-intervenor.

LEIBELL, District Judge.

The defendant, Paramount Pictures, Inc., and the defendant-intervenor, United Paramount Theatres, Inc., moved in the regular motion part of this Court for an order dismissing the plaintiffs' amended complaint and for other relief. The judge sitting in that part referred the motion to me, as the pre-trial judge before whom the case was then pending.

The *amended complaint* states: "Fanchon & Marco, Inc. brings this suit in its own behalf. As a stockholder, and in behalf of all other stockholders similarly situated of Paramount Hollywood Theatre Corporation, Fanchon & Marco, Inc. also brings this suit for and in the name of Paramount Hollywood Theatre Corporation, for the relief hereinafter prayed". Paramount Hollywood Theatre Corporation is itself a plaintiff.

The amended complaint alleges, *in the first cause of action,* that on October 21, 1941, and for many years prior thereto, the defendant "Paramount Pictures Inc. and other corporations and persons engaged in the production, distribution and exhibition of motion pictures throughout the United States and in Los Angeles, were engaged in a conspiracy to restrain and monopolize interstate trade and commerce in motion pictures, in violation of the Acts of Congress known as the anti-trust laws"; that a part of the conspiracy was to monopolize for Paramount Pictures, Inc., the business of exhibiting first run feature pictures in Hollywood and Los Angeles, California, and to exclude all other persons from engaging in that business, save on conditions and terms established by the parties to the conspiracy; that at that time, the plaintiff, Fanchon & Marco, Inc., was desirous of leasing a large theater in Hollywood for the purposes of showing feature films; that in order to do so, it was required to enter into a contract with Paramount Pictures, Inc., which it did, on October 22, 1941; that among other things the parties agreed (according to the allegations of the following paragraphs of the amended complaint):

"11. That Fanchon & Marco, Inc., should make a lease for the theatre for ten years, with an option for an additional ten years, and should assign the lease to a corporation to be organized by Fanchon & Marco, Inc., and Paramount Pictures, Inc.;

"12. That both parties should make equal contribution of money capital to the corporation, for which the stock of the corporation and representation on the board of directors should be divided equally between them;

"13. That Fanchon & Marco, Inc., should manage and operate the theatre for the corporation, for which they should receive five percent of the gross receipts after the deduction of admission sales taxes, and other taxes on gross receipts;

"14. That Paramount Pictures, Inc., should furnish motion pictures for use in the theatre during the term of the lease, and should enter into a contract with the corporation for that purpose."

The amended complaint further alleges that pursuant to the terms of the contract of October 22, 1941, Fanchon & Marco, Inc., leased the theater; that the theater was given the name "Paramount Theatre"; that Fanchon & Marco, Inc., and Paramount Pictures, Inc., organized Paramount Hollywood Theatre Corporation, as a Delaware corporation, on February 4, 1942; that each of the parties contributed one-half of the money for the capital stock and each has had equal representation on the board of directors at all times; that Fanchon & Marco, Inc., entered into a contract to manage the theatre for five percent of the gross; that Fanchon & Marco, Inc., made an assignment of the lease to Paramount Hollywood Theatre Corporation on March 1, 1942.

The amended complaint also alleges that on September 5, 1944, Paramount Pictures, Inc., entered into a contract with Paramount Hollywood Theatre Corporation, as of March 19, 1942, to furnish for exhibition first run at the theatre all of the feature, short subject and newsreel motion pictures (which Paramount Pictures, Inc., should have the right to license and which should be generally released by Paramount Pictures, Inc.) until September 30, 1951; that the contract provided that on or before any first of each year Paramount and the theatre corporation should endeavor to agree upon the rental fees of the films and that such fees should be fair and reasonable.

The amended complaint further alleges that both Fanchon & Marco, Inc., and Paramount Hollywood Theatre Corporation have been unlawfully deprived of a "lawful condition of competition and unrestrained trade for the procurement of motion pictures", because of the conspiracy; and have been unlawfully deprived of the independent and competitive services of Paramount Pictures, Inc.; that Paramount has required the theatre to pay excessive and unreasonable fees for the films, in the sum of $628,000 for feature films and $41,506 for shorts and newsreels.

The amended complaint also charges that the construction of another theatre, on certain land on Wilshire Boulevard, Beverly Hills, purchased by Paramount Hollywood Theatre Corporation, has been prevented by the defendant and that as a result the land has accumulated tax charges and other charges, all resulting in damage to the plaintiffs in the sum of $200,000.

It is also alleged that by virtue of its monopolistic powers Paramount Pictures, Inc., has compelled Paramount Hollywood Theatre Corporation to pay to Paramount Theatres Service Corporation, a wholly owned subsidiary of Paramount Pictures, Inc., $73,600 for "services" which were never rendered.

The *second cause of action* alleged in the amended complaint repeats nearly all of the allegations of the first, and further alleges:

"30. An essential consideration to Fanchon & Marco, Inc., and Paramount Hollywood Theatre Corporation, for the performance of the agreements on their part, as aforesaid, including the making and assignment of the lease to Paramount Hollywood Theatre Corporation, the contribution of money capital to that corporation, the making and performance of the management contract for Paramount Theatre, the delivery and transfer to Paramount Pictures, Inc., of one-half of the stock of Paramount Hollywood Theatre Corporation, the submission to the exclusive dealing contract for pictures with Paramount Pictures, Inc., the submission to the yearly contracts stated in paragraphs 22, 23 and 24, and the submission to and payment of the excessive and unreasonable fees for pictures, was the assurance provided by the exclusive dealing contract that Paramount Pictures, Inc., would furnish the necessary supply of pictures for the Paramount Theatre until September 30, 1951.

"31. On or about March 26, 1947, Paramount Pictures, Inc., informed Fanchon & Marco, Inc., and Paramount Hollywood Theatre Corporation, that as of March 31, 1947, it would no longer perform the contract for pictures of September 5, 1944.

Thereafter Paramount Pictures, Inc., without any legal cause or justification, has failed and refused to perform that contract, and has failed and refused to return to Fanchon & Marco, Inc., and Paramount Hollywood Theatre Corporation any part of the consideration which it has received for the performance of that contract, including one-half of the stock of Paramount Hollywood Theatre Corporation.

"32. Since March 21, 1947, Paramount Pictures, Inc., has produced, distributed and licensed for exhibition first run in Los Angeles by other persons than Fanchon & Marco, Inc., and Paramount Hollywood Theatre Corporation, many pictures of great revenue producing value in the exhibition thereof, which Paramount Hollywood Theatre Corporation was entitled to have for first run exhibition under the contracts of October 21, 1941, and September 5, 1944.

"33. Because of the breach of these contracts, Paramount Hollywood Theatre Corporation, since March 31, 1947, has been forced to procure and use pictures which have produced greatly less revenue at the Paramount Theatre, than pictures licensed by Paramount Pictures, Inc., and which Paramount Hollywood Theatre Corporation would have exhibited; and as the result Fanchon & Marco, Inc., and Paramount Hollywood Theatre Corporation have suffered loss of profits in the sum of fifty thousand dollars."

In addition to the money damages sought, which plaintiffs claim should be trebled, they seek to have Paramount and defendant-intervenor enjoined "from voting or attempting to vote the stock of Paramount Hollywood Theatre Corporation". Plaintiffs have also prayed that defendant and defendant-intervenor be directed to return to Paramount Hollywood Theatre Corporation the stock issued to it by that corporation, on the ground that the stock was issued as consideration for the performance of obligations incurred under the various contracts to which Fan-

chon & Marco, Inc., Paramount Hollywood Theatre Corporation and Paramount Pictures, Inc., were parties and which Paramount has allegedly failed to fulfill.

United Paramount Theatre, Inc., has been permitted to intervene in this action by order of Judge Noonan, dated October 18, 1951, but only as to plaintiffs' claim arising out of the alleged breach of the contract of September 5, 1944. In its answer to the original complaint, United Paramount Theatre, Inc., counterclaimed for a judgment declaring it to be the lawful owner of the 400 shares of (Class B) stock, and enjoining the plaintiffs from interfering with the proper exercise of its rights as a stockholder. The intervenor's interest arises out of an anti-trust suit instituted by the United States against Paramount Pictures, Inc. which terminated in a decree against that defendant, which was entered on March 3, 1949. The judgment directed that the defendant divest itself of all its domestic theatre assets. In accordance with the terms of the judgment directed that the defendant divest itself defendant organized United Paramount Theatre, Inc., and shortly after January 1, 1950, transferred to it the 400 shares of (Class B) common stock of Paramount Hollywood Theatre Corporation. Plaintiffs have denied the efficacy of this transfer, on the ground that the certificate of incorporation of Paramount Hollywood Theatre Corporation provided that no transfer could be made by either of the stockholders, unless an opportunity was first given to the other stockholder to purchase the stock about to be transferred.

Following the service of the amended complaint the defendant brought this motion, under Rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for an order—

"(a) dismissing the action in so far as it purports to be brought by Paramount Hollywood Theatre Corporation upon the ground that said Corporation has not been authorized by proper corporate action to institute or maintain this action;

"(b) dismissing the action in so far as it purports to be brought by Fan-

chon & Marco, Inc. suing as a stockholder on behalf of Paramount Hollywood Theatre Corporation upon the ground that said amended complaint fails to state a claim upon which relief can be granted;

"(c) in the event that the Court should deny the relief requested in (a) above, dismissing the action in so far as it purports to be brought by Fanchon & Marco, Inc. as a stockholder on behalf of Paramount Hollywood Theatre Corporation upon the ground that a stockholder cannot sue derivatively when the Corporation is also purportedly suing in its own name; and

"(d) dismissing the action in so far as it purports to be brought by Fanchon & Marco, Inc. suing on its own behalf upon the ground that said amended complaint fails to state a claim upon which relief can be granted."

In the event that any part of the foregoing relief prayed for is denied, defendants move to stay "further prosecution of so much of this action as is referrable to arbitration pursuant to a certain agreement between Paramount Pictures Inc. and Paramount Hollywood Theatre Corporation, dated September 5, 1944, effective as of March 19, 1942".

Both sides have submitted affidavits and briefs on this motion. I shall now discuss the respective contentions of counsel.

On the argument of the motion and in their briefs the plaintiffs have urged that Paramount Hollywood Theatre Corporation was properly authorized to bring this action and that its president had the authority to direct that it be brought. The corporation was formed under the laws of the State of Delaware on February 4, 1942. Plaintiff, Fanchon & Marco, Inc., and defendant, Paramount Pictures, Inc., were, and still are the only stockholders. Each contributed one-half of the money capital of the corporation, for which each received one-half of the capital stock. Fanchon & Marco, Inc., received the stock designated as "Class A", and Paramount Pictures, Inc., received the "Class B" stock. The alphabetical designations have no significance; both had the same rights under the charter.

The articles of incorporation provided, inter alia, that the holders of the shares of each class shall be entitled to elect one-half of the total number of directors fixed by the by-laws. Article Ninth provides in part that "the number of directors shall not be less than four (4) and shall always be fixed at an even number". This resulted in equal representation on the board for the two stockholders. The holder of the Class A stock was granted the right to elect the President, Treasurer and one or more Assistant Treasurers of the corporation. The holder of the Class B stock was in turn permitted to elect the Vice-President, Secretary and one or more assistant secretaries of the corporation.

An affidavit of Mrs. Fanchon Simon, president and one of the directors of Paramount Hollywood Theatre Corporation, was submitted in opposition to this motion. According to her affidavit, she, by virtue of the powers vested in her as president of the corporation, authorized the prosecution of this action by the corporation. The affidavit alleges also that joint meetings of the stockholders and directors were held on March 14 and March 18, 1949. At one of these meetings, presumably the last, a resolution was passed authorizing the Paramount Hollywood Theatre Corporation to bring suit against Paramount Pictures, Inc., for substantially the same relief as is now prayed for in the amended complaint. Her affidavit admits that no notice of the stockholders' meeting was given Paramount Pictures, Inc., the only other stockholder; and no notice of the Board of Directors meeting was given to the two directors representing Paramount's interest in the Paramount Hollywood Theatre Corporation. Plaintiffs take the position that Paramount Pictures, Inc. and the directors were disqualified from any lawful participation in the meetings because of their alleged adverse interest, and that therefore they were not entitled to any notice. As a result, the only stockholder and the only directors present at the alleged meeting were those representing the Fanchon & Marco, Inc., interests.

538

■ The defendants argue that the by-laws of the corporation do not vest the president with the authority to commence this action; that such authority is vested solely in the board of directors; and that no lawful meeting of the board of directors was ever called or held to authorize this action.

Mrs. Simon relies on the following excerpt from the by-laws of the corporation as the source of her power, as President, to order the commencement of this suit:

"The President shall be the active executive officer of the Corporation, and, subject to the directions of the Board of Directors, he shall have general charge of the business, affairs and property of the corporation and general supervision over its officers and agents."

Although plaintiff's counsel refers to this by-law as conferring "comprehensive powers" upon the president, the language of the by-law made the president only "the active executive officer of the corporation", and his general charge of the business affairs and property of the corporation was subject to the directions of the board of directors. To construe this by-law so broadly as to authorize the president to institute law suits in the name of the corporation, without first having been directed to do so by the corporation, is to read into the by-law a power not expressed and never intended to be inferred.

This conclusion is further supported by the underlying principle of equal power for the two factions, which is manifested in the even division of the directors, officers and stock interest, all expressed in the articles of incorporation and by-laws. Neither one of the two factions, which own the stock of Paramount Hollywood Theatre Corporation, was intended to possess controlling power. Further, the equal division of power, reflected in the corporate structure, was practiced by the two factions in the conduct of the affairs of the corporation, until this action was instituted.

■ Although the president had no power to order that this suit be commenced, the board of directors had such authority, if exercised at a lawfully convened meeting. Article Tenth of the Articles of Incorporation authorizes the board of directors "to exercise all of the powers, rights and privileges of the Corporation, (whether expressed or implied in this Certificate of Incorporation or conferred by statute) and do all acts and things which may be done by the Corporation * * *". That a corporation may commence a legal action on its own behalf cannot be disputed.

■ Article II, Section 10 of the by-laws, a copy of which is attached to defendant's moving papers as Exhibit "A", specified how the Board of Directors was to function. It states:

"*Quorum and Manner of Acting.* At all meetings of the Board of Directors the presence of a majority of the number of directors of the Corporation as fixed by these By-Laws shall be necessary and sufficient to constitute a quorum for the transaction of business, except as otherwise provided by law or by the Certificate of Incorporation. Except as otherwise provided by law or by the Certificate of Incorporation, the act at any meeting of a majority of the number of directors of the Corporation as fixed by these By-Laws shall be the act of the Board of Directors. In the absence of a quorum a majority of the directors present may adjourn the meeting from time to time until a quorum shall be present. The directors shall act only as a board and the individual directors shall have no power as such."

There was no quorum present, at the alleged meeting of the Board of Directors, which could have authorized the commencement of suit against these defendants by Paramount Hollywood Theatre Corporation. The pretended action of two of the Directors at an alleged meeting of which they had given no notice to the other two directors did not comply with the by-laws and was illegal. The resolution authorizing the suit was a usurpation of power by the two directors representing the

Fanchon & Marco, Inc., faction, and was void.

A case directly in point is that of Sterling Industries, Inc. v. Ball Bearing Pen Corp., 298 N.Y. 483, 84 N.E.2d 790, 10 A. L.R.2d 694. In that case, the factual situation was in many respects similar to that in the case at bar, with the exception that all four directors were formally notified of the directors meeting at which a resolution authorizing suit was offered. The two directors who represented the 50% stock interest of Ball Bearing Pen Corp. in Sterling Industries, Inc., voted in opposition to the resolution to authorize the suit against Ball Bearing Pen Corp. The other two directors who represented the other 50% voted for the resolution. The resolution was not carried. The president of the corporation, the nominee of the 50% interest that wanted the suit brought, then took it upon himself to authorize the commencement of the suit. The New York Court of Appeals refused to sanction such action, and reversed the Appellate Division, 273 App.Div. 460, 77 N.Y.S.2d 691, which had reversed an order of Special Term, Sup., 75 N.Y.S.2d 475, vacating the service of the summons and complaint. The Court of Appeals found that the circumstances surrounding the organization of the plaintiff corporation evidenced an intent by the parties forming it, that it should be managed by its board of directors and that corporate action required the sanction of a majority of the Board members. The Court pointed out that Section 27 of the New York General Corporation Law, McKinney's Consol. Laws, c. 23, which provides that the business of a corporation shall be managed by its board of directors, could not be circumvented by the corporation's president. To the same effect see Benintendi v. Kenton Hotel Inc., 294 N.Y. 112, 60 N.E.2d 829, 159 A.L.R. 280; Manson v. Curtis, 223 N. Y. 313, 119 N.E. 559.

The State of Delaware, which is the state of incorporation of Paramount Hollywood Theatre Corporation, has a similar statute. The Revised Code of Delaware 1935, Sec. 2041 provides in part that "The business of every corporation organized under the provisions of this Chapter shall be managed by a Board of Directors, except as hereinafter or in its Certificate of Incorporation otherwise provided". There was no exception in the Statute as to suits by the corporation. Neither the Certificate of Incorporation nor the by-laws of the Paramount Hollywood Theatre Corporation contained any provision that contravened Section 2041 of the Statute.

In Motor Terminals, Inc. v. National Car Co., D.C.Del.1949, 92 F.Supp. 155, affirmed, 3 Cir., 182 F.2d 732, a situation existed which was somewhat similar to the case at bar. In that case, plaintiff (Motor Terminals, Inc.) and defendant (National Car Co.) formed a third corporation, National Fitch Co. in which they each had an equal voice. This bi-factional control was centered in the board of directors. Plaintiff, through the directors representing it on the Board of National Fitch Co. moved to have National Fitch Co. submit to arbitration the disagreement then existing between National Fitch Co. and National Car Corp., as to the construction of their contract. The resolution failed of adoption, because of a tie vote of the directors of National Fitch. A stockholders' derivative action was begun by Motor Terminal, the holder of half of the stock of National Fitch Co. The District Court stated, 92 F.Supp. at page 162:

"Where, as in this case, the taking of the demanded action by the board of directors is prevented by a tie vote, the board being evenly divided between directors representing the only two stockholders of the corporation, the bringing of a stockholder's action would seem to be the appropriate remedy for the disappointed stockholder. See Sterling Industries, Inc. v. Ball Bearing Pen Corp., 298 N.Y. 483, 84 N.E.2d 790, 10 A.L.R.2d 694."

The Delaware District Court held that a real controversy existed between National Fitch Company and National Car Corp. and that Motor Terminals, as a stockholder of National Fitch, could bring an action against National Car on behalf of National Fitch for a declaratory judgment. The opinion of the Third Circuit Court of Ap-

peals, 182 F.2d 732, discussed mainly the question of whether an actual controversy existed as the basis for a suit for a declaratory judgment, and affirmed the rulings of the District Court.

The board of directors of Paramount Hollywood Theatre Corporation had no opportunity, as a Board, to pass upon a resolution authorizing this action, at any meeting duly called, because two of the four directors received no notice of the meeting. Mrs. Simon has stated that the reason she gave no notice to these two directors who represented the Paramount faction, was because she believed that they would oppose any resolution to sue Paramount. So that if she had called a meeting of all four directors the resolution would have failed of passage because the vote would be a tie. That was the situation in the Sterling Industries case.

Plaintiffs' attorney contends that it was not necessary to give notice to the two Paramount Pictures directors because they had no right to vote on the resolution to sue Paramount Pictures in view of their adverse interest. That statement, of and by itself, is not correct, and the argument based thereon is answered by Article 12 of the Articles of Incorporation,[1] which permits the directors to vote on matters in which either they, or the corporations which they represent on the board, are personally interested if that interest is disclosed. No disclosure was necessary. The contemplated action itself was adverse. I have therefor concluded that this action must be dismissed in so far as it is brought by Paramount Hollywood Theatre Corporation.

Although Paramount Hollywood Theatre Corporation was not properly authorized to bring this suit in its own name, it could be joined as a nominal defendant, Price v. Gurney, 324 U.S. 100, 65 S.Ct. 513, 89 L. Ed. 776; Meyer v. Fleming, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595, in a stockholder's derivative suit, if the claims sued on are such as may properly be the subject of a stockholder's derivative suit.

In the course of the hearing on the motion, counsel for the plaintiffs advised the Court that it was his intention to prosecute the claims set forth in the amended complaint for Fanchon & Marco, Inc., suing for itself alone, as well as for Fanchon & Marco, Inc., suing as a stockholder on behalf of Paramount Hollywood Theatre Corporation. He frankly admitted that the claims were to be asserted primarily for Fanchon & Marco, Inc., and only secondarily for Paramount Hollywood Theatre Corporation. Just how that dual position could be maintained, in view of the fiduciary position of a stockholder who brings a derivative action, has not been satisfactorily explained. It should not be permitted. Goodliffe v. Colonial Corp., Utah, 155 P.2d 177.

It is the defendant's contention that none of the claims set forth in the amended complaint can be brought by Fanchon & Marco, Inc., suing in either of its two capacities.

I shall consider first the claims pleaded in the amended complaint as being brought by Fanchon & Marco, Inc., as a stockhold-

[1] "*Article Twelfth*: In case the Corporation enters into contracts or transacts business with one or more of its directors, or with any firm of which one or more of its directors are members or employees, or with any other corporation or association of which one or more of its directors are stockholders, directors, officers or employees, such contract or transaction shall not be invalidated or in any wise affected by the fact that such director or directors have or may have interests therein which are or might be adverse to the interests of the Corporation, even though the vote of the director or directors having such adverse interest shall have been necessary to obligate the Corporation upon such contract or transaction, provided, however, that in any such case the fact of such interest shall be disclosed or known to the other directors acting upon or in reference to such contract or transaction. No director or directors having such disclosed or known adverse interest shall be liable to the Corporation or to any stockholder or creditor thereof to any person for any loss incurred by it under or by reason of any such contract or transaction, nor shall any such director or directors be accountable for any gains or profits realized thereon."

er suing in the right of Paramount Hollywood Theatre Corporation and then consider the claims asserted by Fanchon & Marco, Inc., in its own right.

Defendant's attorneys argue that a stockholder's derivative suit does not lie for the recovery of treble damages under the anti-trust laws, because the claim is one at law. See Fleitmann v. Welsbach Street Lighting Co., 1916, 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505, and United Copper Co. v. Amalgamated Copper Co., 1917, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119. Two Second Circuit cases are also in point. Decorative Stone Co. v. Building Trades Council, 2 Cir., 1928, 23 F.2d 426 and Meyer v. Kansas City Southern Ry. Co., 2 Cir., 1936, 84 F.2d 411.

In the Fleitmann case, plaintiff, a stockholder, sued the defendant, Welsbach Street Lighting Co. and a number of other corporations and individuals, to compel the defendants to pay to Consolidated Street Lighting Company, the corporation in which he was a stockholder, three-fold damages under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. The Supreme Court pointed out that a stockholder's derivative suit was one in equity and affirmed the decisions of the courts below dismissing the action.

"* * * but we agree with the courts below that when a penalty of triple damages is sought to be inflicted, the statute should not be read as attempting to authorize liability to be enforced otherwise than through the verdict of a jury in a court of common law. On the contrary, it plainly provides the latter remedy, and it provides no other." [240 U.S. 27, 36 S.Ct. 234.]

A year later the Supreme Court handed down its decision in the United Copper case. Like the Fleitmann case, that was a stockholder's derivative action, but unlike the Fleitmann case it was brought at law. The Supreme Court concluded that the remedy sought was not at law and said [244 U.S. 261, 37 S.Ct. 511]:

"The particular equitable relief sought in Fleitmann v. Welsbach Co., 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505,

was denied; but this denial affords no reason for assuming that the long-settled rule under which stockholders may seek such relief only in a court of equity will be departed from because the cause of action involved arises under the Sherman Law."

The new Federal Rules of Civil Procedure, which went into effect in September 1938, have not set aside the two Supreme Court decisions. The new Rules have abolished some of the procedural distinctions between law and equity as well as distinctions in forms of action. Grauman v. City Company of New York, S.D.N.Y., 1939, 31 F.Supp. 172; Bereslavsky v. Socony-Vacuum Oil Co. Inc., S.D.N.Y. 1946, 7 F.R.D. 444. A single form of action is provided for in Rule 2, F.R.C.P., 28 U.S.C.A., but the basic difference between law and equity has not been changed. Bereslavsky v. Caffey, 2 Cir., 1947, 161 F.2d 499, certiorari denied 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355; Commercial Nat. Bank in Shreveport v. Parsons, 5 Cir., 1944, 144 F.2d 231, certiorari denied 323 U.S. 796, 65 S.Ct. 440, 89 L.Ed. 635.

The question we deal with here is one of substance rather than procedure. The derivative nature of the stockholder's suit requires that it be brought in equity. The stockholder sues not on his own right, but he seeks to enforce a right of the corporation. Although a corporation may maintain an action for treble damages at law, a stockholder suing derivatively may not do so because the Supreme Court has interpreted the anti-trust laws as limiting the recovery of the treble damages to those recoverable "through the verdict of a jury in a court of common law". [240 U.S. 27, 36 S.Ct. 234.] The fact that the new Federal Rules permit the joinder in one action of legal and equitable claims, Ring v. Spina, 2 Cir., 166 F.2d 546, a matter of procedure, does not alter the principles laid down by the Supreme Court in the Fleitmann and United Copper Co. cases:

I have therefore concluded that the claims for treble damages pleaded in the stockholder's derivative suit brought by Fanchon & Marco, Inc., as a stockholder,

in behalf of Paramount Hollywood Theatre Corporation, should be dismissed. Whether a derivative stockholder's suit could be brought for alleged breach by Paramount Pictures, Inc., of the contract to furnish films to Paramount Hollywood Theatre Corporation need not now be decided, because the complaint is framed on an alleged violation of the anti-trust laws. If the stockholder wishes to amend the amended complaint to plead claims not based on violations of the Federal anti-trust laws, permission to do so might be granted. Kalmanash v. Smith, 291 N.Y. 142, 51 N.E.2d 681. But if any such permission were granted it would have attached to it certain conditions: (1) that the stockholder's claim on behalf of the Paramount Hollywood Theatre Corporation be severed from the claim of Fanchon & Marco, Inc.; (2) that said claim be first tried; and (3) that meanwhile the trial of the Fanchon & Marco, Inc., claims be stayed.

As part of the relief sought in this action plaintiffs ask that defendants be ordered to return to Paramount Hollywood Theatre Corporation the 400 shares of Class B stock which Paramount Pictures, Inc. bought and paid for. If this were ordered, it would leave only the 400 shares of Class A stock, owned by Fanchon & Marco, Inc., as the outstanding stock of Paramount Hollywood Theatre Corporation. The effect of this would be that any money damages recovered by Paramount Hollywood Theatre Corporation in the derivative action would eventually go to Fanchon & Marco, Inc. Further, it would, in effect, transfer to Fanchon & Marco, Inc. one-half of all capital assets of Paramount Hollywood Theatre Corporation, without making any payment therefor. That would be confiscation, presumably for the benefit of Paramount Hollywood Theatre Corporation, but actually for the plaintiff, Fanchon & Marco, Inc.

■ There is no sanction imposed by the Federal anti-trust laws that authorizes a confiscation of the property of the alleged violator of the anti-trust laws in a private right of action. Treble damages is the extreme penalty which may be recovered in a private right of action under Section 15 of Title 15 U.S.C.A. by "Any person who shall be injured in his business or property". The injured person may recover "threefold the damages by him sustained".

■ Nor can the surrender of the 400 shares of Class B stock be ordered in a private right of action under Title 15 U.S.C.A. § 26, which relates to injunctive relief. Relief of the type plaintiff is seeking is reserved for the government in anti-trust suits. See Alden-Rochelle, Inc. v. American Soc. of Composers, Authors and Publishers, D.C., 80 F.Supp. 900 at page 903 and cases cited therein.

■ The injunctive relief to which a private party is entitled under Section 26 of Title 15 U.S.C.A. is an injunction against threatened loss or damage to the plaintiff by a continuing or threatened violation of the anti-trust laws. The injunction may issue "under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings". Graves v. Cambria Steel Co., D.C., 298 F. 761. Do we have here a "threatened multiplicity of torts at law"? No loss, alleged in the original complaint was a continuing one when the original complaint was filed (3/30/49), except that resulting from the alleged violation by defendants of the contracts of October 21, 1941 and September 5, 1944 with their "exclusive dealing provisions", under which "Paramount Hollywood Theatre Corporation was entitled to have for first run exhibition" pictures licensed by Paramount Pictures, Inc., for first run in Los Angeles. It is alleged that on March 26, 1947, Paramount Pictures, Inc., informed Fanchon & Marco, Inc., that as of March 31, 1947, it would no longer perform the September 5, 1944 contract for pictures. Defendant contends that Paramount Pictures, Inc., in giving that notice of March 26, 1947 was complying with the provisions of a decree entered in this Court in December 1946 in an anti-trust suit brought by the government against Paramount Pictures, Inc. and a

number of other large producers and distributors of motion pictures.[2]

 Plaintiffs would not be entitled to any injunctive relief because of this alleged injury, if to grant the relief would run counter to the decree in the government's anti-trust suit. Further, the injunctive relief sought, namely an injunction restraining defendants from voting their stock in Paramount Hollywood Theatre Corporation would itself not be an effective measure to compel Paramount Pictures, Inc., to perform the "exclusive dealing" provisions of the October 21, 1941 and September 5, 1944, contracts. And there is this final objection, which would bar any

2. On December 31, 1946, a special expediting court entered a decree in this district in the case of United States of America v. Paramount Pictures, Inc., D. C., 66 F.Supp. 323, Id., D.C., 70 F.Supp. 53, 73, enjoining the defendant, Paramount Pictures, Inc., "from further performing any existing franchise to which it is a party". The term "franchise" as used in the decree was defined as "a licensing agreement or series of licensing agreements, entered into as a part of the same transaction, in effect for more than one motion picture season and covering the exhibition of pictures released by one distributor during the entire period of agreement." Fanchon & Marco, Inc., and Paramount Pictures, Inc., were parties to such a licensing agreement. The operation of the judgment was stayed for sixty days and if an appeal was taken, for an additional thirty days in order to enable any appellant to move before the Supreme Court for a stay in respect to any portion of the judgment from which an appeal had been taken.

On March 26, 1947, Paramount Pictures, Inc., advised Fanchon & Marco, Inc., that it would no longer supply motion pictures to the Paramount Hollywood Theatre Corporation on the ground that such action was dictated by the terms of the decree of this court.

Paramount subsequently appealed from the decree, and on May 3, 1948, the United States Supreme Court rendered its decision in which it affirmed the judgment in part and reversed it in part. 343 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260. The Supreme Court set aside the District Court's findings on franchises and consequently nullified that part of the decree which directed Paramount to refrain from giving effect to any existing franchise agreement.

The case, having been remanded by the Supreme Court for further proceedings was re-tried, but prior to the rendition of any decision the plaintiff and Paramount Pictures, Inc. agreed to the entry of a consent decree. This decree was approved by the court on March 3, 1949. Although the consent decree was entered in lieu of the decree of this court, dated December 31, 1946, it retained the prohibition against the performance of any existing franchise to which Paramount Pictures, Inc., was a party, with certain exceptions. By the terms of the judgment Paramount Pictures, Inc. was to ultimately divest itself of all its domestic theatre assets by transferring them to the new Theatre Company, which eventually was incorporated as United Paramount, Inc. As respects those interests which Paramount held in conjunction with an independent exhibitor, the decree provided that either Paramount Pictures, Inc., or the New Theatre Company could transfer its interest either by sale or otherwise to the co-owner or to a third party. (III–9(a). As an alternative, Paramount Pictures, Inc. or the New Theatre Company could purchase the interest of the co-owner for purposes of selling the entire joint interest to a third party. (III–9(c). A third provision (III–9(b) made it possible for Paramount or the New Theatre Company to purchase the interest of the co-owner of certain theatres, but the Paramount Theatre in Hollywood, California, was not included in this group.

Numerous orders modifying the consent decree were entered subsequent to March 3, 1949. One of these, filed on December 16, 1949, specified as follows:

"A. The defendant, Paramount Pictures Inc., is ordered to effect the divorcement of its theatre assets located in the United States from its other assets by transferring on or about December 31, 1949, or as soon thereafter as practicable but in no event later than March 3, 1950, such theatre assets to the New Theatre Company and such other assets to · to the New Picture Company and thereafter to dissolve."

Pursuant to the terms of the order Paramount Pictures, Inc., on December 30, 1949, transferred to United Paramount Theatre, Inc., all the theatre assets of the former, located in the United States. That included the Class B stock of Paramount Hollywood Theatre Corporation owned by Paramount Pictures, Inc.

injunctive relief based upon the alleged failure to furnish first run pictures under the contract of September 5, 1944, an objection which is inherent in the contract itself. The contract by its terms expired September 30, 1951. An injunctive provision in a judgment in an action in equity deals with the situation existing at the time the judgment is made and applies to the future. It is prospective. It cannot be used to enforce the provisions of a contract which has already expired.

The claim of loss or damage for sums paid as excessive rental fees for pictures shown by Paramount Hollywood Theatre Corporation and the claim for so-called "service" charges made by Paramount Theatres Service Corporation, a wholly owned subsidiary of Paramount Pictures, Inc., are all in the past and are not in the class of "threatened loss or damage". They arose out of the same contract, now expired. No injunctive relief could be based on those alleged losses.

Plaintiffs ask for injunctive relief to prevent the defendants from voting their Class B stock on matters concerning the building of a theatre on the Paramount Hollywood Theatre Corporation's land located on Wilshire Boulevard in Beverly Hills. There were no allegations covering the Beverly Hills property in the original complaint. They are set forth in paragraph 25 of the amended complaint as follows:

"25. Paramount Hollywood Theatre Corporation purchased land in Beverly Hills, California, for the purpose of building and operating a motion picture theatre. Thereafter, upon the entry of a judgment by this Court in the case of United States v. Paramount Pictures Inc. [D.C., 66 F.Supp. 323; Id., D.C., 70 F.Supp. 53,] Equity No. 87–273, requiring Paramount Pictures Inc. to divest itself of the stock of Paramount Hollywood Theatre Corporation, the defendants, in pursuance and in continuation of the aforesaid conspiracy, have prevented the construction and operation of the theatre, and the normal and profitable increase of the business of Paramount Hollywood Theatre Corporation. The land has been va-

cant and unproductive since acquired, and heavy taxes and mortgage and other expenses have been incurred and paid by Paramount Hollywood Theatre Corporation, to wit, in the amount of $200,000."

The "minutes" of the combined meeting of the stockholders and directors of Paramount Hollywood Theatre Corporation, held March 14 and 18, 1949, attended only by Fanchon & Marco, Inc., holder of 400 shares of Class A stock and by Fanchon Simon and Harry C. Arthur, Jr., directors of Paramount Hollywood Theatre Corporation (the Class B stock owned by Paramount Pictures, Inc., and the two directors elected by that stock received no notice of the meeting) contain the following:

"On January 31, 1946, Paramount Hollywood Theatre Corporation purchased land in Beverly Hills for the purpose of building and operating a motion picture theatre for showing Paramount pictures on first run. An architect was employed, who designed and drafted plans for a theatre. Thereafter Leonard H. Goldenson, acting for Paramount Pictures, Inc., as a stockholder of this corporation, objected to proceeding with the construction of the theatre, because he believed Paramount Pictures Inc. will be required to cease to have an interest in Paramount Hollywood Theatre Corporation. This objection is preventing Paramount Hollywood Theatre Corporation from procuring necessary financing and making other necessary contracts.

"At a meeting of stockholders and directors of Paramount Hollywood Theatre Corporation on September 27, 1948, Fanchon & Marco offered a resolution that the corporation should proceed without further delay to build and operate a motion picture theatre on the land in Beverly Hills, and voted in favor of the resolution. But Leonard H. Goldenson, acting on behalf of Paramount Pictures Inc. voted against the resolution, and threatened that suit would be brought against Mrs. Fanchon Simon, if Paramount Hollywood Thea-

tre Corporation should attempt to proceed with the building of the theatre.

"The normal and profitable increase of the business of Paramount Hollywood Theatre Corporation is thus being prevented by the action of Paramount Pictures Inc. and the holding and use of its stock by Paramount Pictures Inc. The land in Beverly Hills is vacant and unproductive since acquired in 1946 and heavy taxes and mortgage and other expenses for retention of the land, have been and are now being paid by Paramount Hollywood Theatre Corporation."

These minutes were not reduced to writing "until recently", and by the plaintiffs' attorney. The language used in the minutes in relation to the Beverly Hills property is in some respects the same as the allegations of paragraph 25 of the amended complaint, which was sworn to March 28, 1952. No mention of the Beverly Hills property was made in the original complaint which was filed March 30, 1949, about two weeks after the alleged meetings of stockholders and directors of Paramount Hollywood Theatre Corporation on March 14 and 18, 1949.

The payment of taxes and interest on mortgages on unproductive land might represent a continuing loss. And there may be losses that Paramount Hollywood Theatre Corporation will sustain because it was prevented, by the vote of a Paramount Pictures, Inc.'s representative on the board, from expanding its theatre business through the construction of a theatre on the Beverly Hills land, although any such losses would be highly speculative. Assuming that such losses could be shown, an injunction to bar defendants from voting the 400 shares of Class B stock on any plan to build a theatre on the land would not be proper. The provisions of the contract of October 22, 1941 under which Paramount Hollywood Theatre Corporation was incorporated and by By-Laws drawn, clearly provided that the two factions should have equal power. To grant the injunction would run counter to that arrangement and put all the power in the hands of Fanchon & Marco, Inc., in relation to this asset of Paramount Hollywood Theatre Corporation.

Further an action under the Federal anti-trust laws is not the proper action in which to seek such relief. The use to be made of the Beverly Hills land is a matter of business judgment that concerns the internal management of the corporation. If plaintiffs wish to seek any injunctive relief in respect to the 400 shares of Class B stock and the Beverly Hills land they should seek it in another type of action.

Defendant's conduct in refusing to vote for a resolution to build a motion picture theatre on the Wilshire Boulevard property at Beverly Hills has not been arbitrary. Paramount Pictures, Inc., did not prevent the Paramount Hollywood Theatre Corporation from disposing of the Beverly Hills property which is in a good location on Wilshire Boulevard. The correspondence between the parties in the period of December 1946 to December 1948, annexed to the affidavit of attorney Bickford and the minutes of the Directors' meeting of September 27, 1948, show that the directors representing the defendants suggested several plans for disposing of the real property, either by a physical partition thereof between the two 50% stock interests, or by a sale of the whole property to Fanchon & Marco, Inc., or to a third party, at a fair value to be fixed by appraisal. On a physical division of the property either side was to have the right to use its own half in any way it pleased, including erecting a motion picture theatre thereon. Fanchon & Marco, Inc., did not like that suggestion. Actually, what Fanchon & Marco, Inc., wanted, was to have part of the property used to build a theatre with the assets and credit of Paramount Hollywood Theatre Corporation, and the other half of the property sold later. This the defendants would not agree to. There is no charge in the letters written by Fanchon & Marco, Inc., discussing the use or other disposition of the Beverly Hills property, that the defendants were engaged in any conspiracy to violate the anti-trust laws. The opposing views of the parties were set forth without any bitterness and apparently represented the best judgment of each as to what should be done with the Beverly Hills property. The correspondence also shows that both sides

thought the property valuable. Indeed, the increase in the value of the property since 1946 may have offset all the carrying charges.

■ Fanchon & Marco, Inc.'s contention that Paramount Pictures, Inc., under Article Fourth, Section A, of the certificate of incorporation of Paramount Hollywood Theatre Corporation could not transfer its stock in Paramount Hollywood Theatre Corporation to the defendant-intervenor, United Paramount Theatre, Inc., without first offering it to Fanchon & Marco, Inc., for purchase seems to be in conflict with the provisions of the last paragraph of said Section A and the provisions of subsection (b) of Section A. The aforementioned last paragraph of Section A provides:

"The foregoing provisions of this Section A shall not apply to, nor in anywise restrict the transfer of shares of stock of the Corporation by will or by operation of the law of succession on death, or the sale or transfer of such shares in the cases hereinafter specifically provided for in Subsection (a) and Subsection (b) of this Section A."

Subsection (b) provides:

"*Subsection (b)* Paramount Pictures Inc., a New York corporation, whenever it shall be or become the owner or holder of shares of capital stock of the Corporation, shall be entitled, at any time, or from time to time, to cause to be transferred on the books of the Corporation, all of such shares to:

"(i) any corporation resulting from the consolidation or merger of the said Paramount Pictures Inc. with another corporation;

"(ii) any corporation to which substantially all of the business and assets, or substantially all of the theatre exhibition business and assets (including shares of stock in theatre operating or holding corporations), of Paramount Pictures Inc. shall be transferred."

Further, the transfer of Paramount Pictures, Inc.'s stock interest in Paramount Hollywood Theatre Corporation to United Paramount Theatres, Inc., was in compliance with the provisions of "the aforementioned decree" of this court, dated March 3, 1949, in the government's anti-trust suit against Paramount Pictures, Inc., and other motion picture producers. United Paramount Theatres, Inc., was organized to receive the stockholding of Paramount Pictures, Inc., in theatres throughout the country, of which the court's decree required Paramount Pictures, Inc., to divest itself.

In view of the asserted claim by Fanchon & Marco, Inc., that United Paramount Theatres, Inc., does not have legal title to any of the said shares of stock and the refusal of the officers and directors of Paramount Hollywood Theatre Corporation named by Fanchon & Marco, Inc., to recognize and give effect to United Paramount Theatres, Inc.'s rights as the owner of said 400 shares of Class B stock, the intervenor, United Paramount Theatres, Inc., has pleaded a counterclaim asking that it have a declaratory judgment under Title 28 U.S.C. § 2201, that it is the lawful owner of 400 shares of Class B stock of Paramount Hollywood Theatre Corporation.

This Court has jurisdiction of the counterclaim of the defendant-intervenor, United Paramount Theatres, Inc., both of the subject matter and of the parties. The decision on the counterclaim will dispose of Fanchon & Marco, Inc.'s asserted claims to the 400 shares of Class B stock. I have concluded that the act of Paramount Pictures, Inc., in transferring the 400 shares of Class B stock to United Paramount Theatres, Inc., was in compliance with the decree in the government's anti-trust suit. United States v. Paramount Pictures. It was not a voluntary sale or transfer of the stock. An analogous situation, in the matter of Kokol v. Paramount Pictures, Inc., 275 App.Div. 1021, 92 N.Y.S.2d 103, affirmed 300 N.Y. 685, 91 N.E.2d 333, received a similar interpretation.

Defendant's grounds for moving for the dismissal of the action as prosecuted by Fanchon & Marco, Inc., in its own behalf, are based on the contention that all the claims on which Fanchon & Marco, Inc.,

is suing, are claims of Paramount Hollywood Theatre Corporation. In the course of the hearing on the motion, plaintiffs' counsel stated that Fanchon & Marco, Inc., was suing on the same claims as Paramount Hollywood Theatre Corporation. He argued, however, that apart from any claim which might have accrued solely to Paramount Hollywood Theatre Corporation, Fanchon & Marco, Inc., had set forth in the amended complaint a claim all its own, namely that the monopoly alleged in the amended complaint deprived Fanchon & Marco, Inc., of a competitive and free market in the procurement of motion pictures, and forced plaintiff into a contractual relationship with the defendant, Paramount Pictures, Inc., which it otherwise would not have made. Although this claim is not pleaded in that language, it can be spelled out of the allegations of the complaint. There is another possible claim in the amended complaint, that belongs to Fanchon & Marco, Inc., rather than to Paramount Hollywood Theatre Corporation. It arises out of the contract of February 24, 1942. By the terms of that contract Fanchon & Marco, Inc., was to manage the Hollywood Theatre at five percent of the gross. If any acts of the defendant, Paramount Pictures, Inc., in violation of the anti-trust laws, reduced the gross revenues of the Hollywood Theatre, that would injure Fanchon & Marco, Inc.'s business in managing the theatre and affect its share of the gross receipts under the five percent contract.

The other claims on which Fanchon & Marco, Inc., attempts to sue in its own right, do not belong to it. The claim arising out of the "service" charges of the Paramount Theatres Service Corp., the claim for damages arising out of the payment of alleged unreasonable rental fees for the motion pictures supplied by Paramount Pictures, Inc., and the claim based on the taxes and other charges incurred on the vacant property situated in Beverly Hills, California, would be claims of Paramount Hollywood Theatre Corpo-

ration in a proper action. Under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, the private right of action for treble damages is limited to a "person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws". Fanchon & Marco, Inc., cannot be granted judgment for damages sustained solely by Paramount Hollywood Theatre Corporation. A stockholder cannot sue under the Federal anti-trust laws for damages to his stock by reason of anything forbidden by the anti-trust laws. Ames v. American Telephone & Telegraph Co., C.C., 166 F. 820; Westmoreland Asbestos Co. Inc. v. Johns-Manville Corp., D.C., 30 F.Supp. 389, affirmed, 2 Cir., 113 F.2d 114; Gerli v. Silk Ass'n of America, D.C., 36 F.2d 959.

Fanchon & Marco, Inc., has no claim for equitable relief under Title 15 U.S.C.A. § 26. It cannot obtain in a suit under the Federal anti-trust laws a decree to compel the defendants to turn over to Paramount Hollywood Theatre Corporation the 400 shares of Class B stock and it is not entitled in such a suit to any injunctive relief restraining the defendants from voting that stock. What has been said on that point in respect to the claim for such relief by Paramount Hollywood Theatre Corporation in the stockholders' derivative action applies equally to the action by Fanchon & Marco, Inc., in its own behalf.

The defendant, Paramount Pictures, Inc., contends on this motion that if the Court should fail to dismiss this action insofar as it purports to be brought by Paramount Hollywood Theatre Corporation in its own name and insofar as it purports to be brought by Fanchon & Marco, Inc., as a stockholder on behalf of Paramount Hollywood Theatre Corporation, then the court should stay "further prosecution of so much of this action as is referrable to arbitration" pursuant to the aforementioned agreement "until such arbitration has been had in accordance with the terms of said agreement".[3]

3. "Agreement made and entered into this 5th day of September, 1944 as of the 19th day of March 1942, by and between

Paramount Pictures Inc. and Paramount Hollywood Theatre Corporation". It was to cover "the period commencing on or

Although I have concluded that this action allegedly brought by Paramount Hollywood Theatre Corporation in its own behalf should be dismissed, and that in itself would dispose of this part of defendants' motion, I feel that I should make the following observations.

 If this were an ordinary breach of contract case, the only claim of the complaint that would come within the arbitration paragraph of the contract, is that asserted in paragraph 24 of the amended complaint alleging that Paramount Hollywood Theatre Corporation was required "to pay excessive and unreasonable fees for feature, short subject and newsreel motion pictures for exhibition at the Paramount Theatre". But this is not a suit for breach of contract. It is a private right of action under the Federal anti-trust laws for treble damages, allegedly sustained by Paramount Hollywood Theatre Corporation by reason of certain acts of Paramount Pictures, Inc., which are alleged to have been violations of the anti-trust laws. The arbitration clause does not cover this type of claim. Further, if the arbitration clause did expressly cover a claim under the anti-trust laws its enforceability would be questionable, because it would be contrary to the public policy implicit in the Federal anti-trust laws. If plaintiff stockholder amends the complaint to eliminate claims for treble damages under the anti-trust laws and sues only for breach of the contract to furnish films, the arbitration clause of the contract, may be considered by the Court on an application for a stay, to the extent above indicated.

Defendants' motion is accordingly disposed of as follows:

(a) The motion to dismiss the action insofar as it purports to be brought by Paramount Hollywood Theatre Corporation is granted, because the action was not properly authorized by the Board of Directors.

(b) The motion to dismiss the action insofar as it purports to be brought by Fanchon & Marco, Inc., suing as a stockholder, on behalf of Paramount Hollywood Theatre Corporation, is granted, for the reasons stated at length in this opinion.

(c) It is unnecessary to rule upon the relief requested in paragraph (c) of defendants' motion, in view of the fact that the action by Paramount Hollywood Theatre Corporation is dismissed.

(d) The motion to dismiss the action brought by Fanchon & Marco, Inc., suing on its own behalf, is granted to the extent hereinabove indicated, with leave to said plaintiff to serve an amended complaint that will be consistent with the views herein expressed.

It seems to me that Fanchon & Marco, Inc., could have better asserted its claims against the defendants in an action not based on the Federal anti-trust laws. Of course, in any action Fanchon & Marco, Inc., will have to meet the special defenses asserted by the defendants in their briefs,

about March 19, 1942 and ending on or about September 30, 1951", a so-called "ten year period".

Paragraph Ninth of the agreement provides for arbitration if the parties "fail to agree on or before each respective August 1st as to any of the following matters."

1. "The classification feature photoplays and the number thereof in each classification".

2. "The exhibition period of the feature photoplay, short subject photoplays and newsreels licensed hereunder."

3. Clearance to be granted both as to time and area, which clearance shall be "fair and reasonable."

4. The license fees payable for the license to "exhibit each photoplay" etc.

"which license fees shall be 'fair and reasonable' ".

5. The admission prices which shall be charged by the Exhibitor (Paramount Hollywood Theatre Corporation). * * * "Such admission prices shall be comparable in amount to the average admission prices charged for admission by theatres of similar character in cities of corresponding size and conditions as nearly as may be. * * * "

The arbitration paragraph (Ninth) contained a condition that "in any such arbitration the arbitrators shall not have the power to make any award which shall provide for terms and conditions less favorable to Paramount (the producer) than the terms and conditions prevailing during the release year in controversy * * *."

such as the defense based on the principle of "in pari delicto" and defense of the Statute of Limitations.

Settle an order in accordance with this opinion.