331 F.2d 547
 JEWEL TEA COMPANY, Inc., a New York corporation, Plaintiff-Appellant,
v.
ASSOCIATED FOOD RETAILERS OF GREATER CHICAGO, INC., an Illinois corporation, and Charles H. Bromann, Defendants-Appellees.
JEWEL TEA COMPANY, Inc., a New York corporation, Plaintiff-Appellant,
v.
LOCAL UNIONS NOS. 189, 262, 320, 546, 547, 571 AND 638, AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL-CIO, et al., Defendants-Appellees.
 No. 14119.
 No. 14196.
 United States Court of Appeals Seventh Circuit.
 April 27, 1964.
 Rehearing Denied in No. 14119 May 14, 1964.
 
 George B. Christensen, Theodore A. Groenke, Fred H. Daugherty, Samuel Weisbard, Chicago, Ill., for appellant.
 Allen Whitfield, Harley A. Whitfield, Des Moines, Iowa, Whitfield, Musgrave, Selvy & Kelly, Des Moines, Iowa, of counsel, for National Livestock Feeders Ass'n, amicus curiae.
 Bernard Dunau, Washington, D. C., Sidney M. Libit, Lester Asher, Leo Segall, Robert C. Eardley, Chicago, Ill., for appellees.
 Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Jewel Tea Company, Inc., a New York corporation, plaintiff, has appealed from judgments entered by the district court, after our remand in case No. 12653.[1]
 
 
 2
 This action is for a declaratory judgment and seeks relief under the Sherman Act. 15 U.S.C.A. §§ 1 and 2.
 
 
 3
 At a trial, the district court dismissed defendants Associated Food Retailers of Greater Chicago, Inc., an Illinois corporation, and Charles H. Bromann, its secretary, at the close of plaintiff's case,[2] which action is attacked in No. 14119, and dismissed the complaint as to the defendants Local Unions Nos. 189, 262, 320, 546, 547, 571 and 638 of Amalgamated Meat Cutters and Butcher Workmen of North America AFL-CIO and certain officers and representatives of the unions as named in our opinion in case No. 12653, at the close of all the evidence,[3] which action is attacked in No. 14196. The appeals have been consolidated here.
 
 
 4
 Plaintiff contends that the district court erroneously failed to follow the law of the case and the principles of antitrust law, and disregarded the arbitrary and unreasonable nature of the restraint (imposed by defendants on plaintiff's business) and the magnitude of its effect on trade. Defendants urge that plaintiff failed to prove a conspiracy, and that union activity to attain market operating hours is a reasonable regulation of trade not within the prohibition of the Sherman Act, and does not restrain interstate commerce. Also, they argue that plaintiff failed to prove injury to its business or property and that it is in pari delicto.
 
 
 5
 In our prior opinion, 274 F.2d at 221, we said:
 
 
 6
 "Facts set forth in the complaint show a `wide-spread public demand in the Chicago area that meat be available for retail purchase at Jewel stores during one or more evenings of the week.' Plaintiff has an untrammeled right to determine its course of action in respect to this matter.
 
 
 7
 "Whether one system of marketing or another offers the greater good and better prices in any given community is to be determined by the public: the laws of free competition may not be thwarted by a combination of employers and unions who conspire to prevent commercial development."
 
 
 8
 The evidence admitted by the district court on remand is in the record now before us. It sustains the material allegations of the complaint. There are no factual disputes revealed by the evidence. No question as to the credibility of any witnesses on any issue which we consider relevant, has been raised. Therefore, our holding of the law on the facts as stated in the complaint we now adopt as our holding of the law as applied to the evidence upon remand. Especially do we reaffirm our rejection of defendants' contention that an agreement pertaining to market operating hours is exempt from the antitrust laws since it was entered into in the self-interest of the employees to attain or maintain conditions deemed by the union relevant to the employees' working welfare. Significantly, we then quoted from Allen Bradley Co. v. Local Union No. 3, IBEW, 325 U.S. 797 at 808-810, 65 S.Ct. 1533 at 1539, 89 L.Ed. 1939 (1945), where the exemption was qualified, the court stating:
 
 
 9
 "* * * Congress never intended that unions could, consistently with the Sherman Act, aid non-labor groups to create business monopolies and to control the marketing of goods and services.
 
 
 10
 * * * * * *
 
 
 11
 "Our holding means that the same labor union activities may or may not be in violation of the Sherman Act, dependent upon whether the union acts alone or in combination with business groups. * * *" (Emphasis supplied.)
 
 
 12
 The district court sought to support its decision by citing the fact that, as a result of collective bargaining between the meat butchers and the retailers in 1920, they entered into an agreement which covered many questions in dispute, including a limitation on marketing hours. The court points out that when plaintiff came into the Chicago area in 1933, it entered into similar agreements with defendant unions. Such agreements did follow in succession until 1957 when plaintiff raised and insisted upon the position it takes in this case. Plaintiff in 1957, 1959 and 1961 sought an agreement on evening operations. It was unsuccessful.
 
 
 13
 The district court states as its principal finding that the "restriction [against evening hours] was imposed after arm's length bargaining, * * * These are not objects which the antitrust laws proscribe. They are conditions of employment, and as such are clearly within the labor exemption of the Sherman Act. * * *" We cannot agree. To make a business succeed, thereby furnishing employment to persons engaged in its operation, the responsibility rests upon the employer to determine where the business will be located, his acquisition of necessary buildings and fixtures, the installation of the business and its subsequent maintenance, his establishment of credit with suppliers of commodities and the various other responsibilities resting upon a proprietor. One of the proprietary functions is the determination of what days a week and what hours of the day the business will be open to supply its customers. Among the decisions which the proprietor must make and upon which his success and the livelihood of his employees depend is how to attract customers, which must be accomplished by the quality of merchandise offered at such times as shall be convenient to the public.[4] It follows clearly that whether fresh meats are to be sold after 6 P.M. depends upon the convenience and requirements of the people living within shopping distance of the place of business. The hours of the day when his business is to be open to accommodate the demands of customers, in the judgment of the owner of the business, is not a condition of employment, contrary to the district court's finding. As long as all rights of employees are recognized and duly observed by the employer, including the number of hours per day that any one shall be required to work, any agreement by a labor union, acting in concert with business competitors of the employer, designed to interfere with his operation of a retail business, engaged in handling products in the course of interstate commerce, is a violation of the Sherman Act, and not entitled to the exemption therefrom claimed by the defendant unions in this case.
 
 
 14
 The district court overlooks the fact that whether the butchers have jobs at all depends on whether they will serve the demands of the public. It also overlooks that the furnishing of a place and advantageous hours of employment for the butchers to supply meat to customers are the prerogatives of the employer. As we said (274 F.2d at 221):
 
 
 15
 "* * * An employer has the right and it is his duty, if he is to survive commercially, first to determine the needs of the public, second to provide a time, a place and facilities for meeting those needs, and third to provide, under the terms of the National Labor Relations Act, the services of employees to accomplish the foregoing objectives. The rights of labor attach only to the third, and if any effort is made by labor to infringe rights of the employer in the first or second field, it is not shielded from the sword of the anti-trust laws. Determining the needs of the public and meeting those needs are inherent proprietary rights and obligations of the employer and must be clearly distinguished from his rights and duties as master in the master and servant relationship. Setting marketing hours is one such proprietary function which an employer has the exclusive right to determine as dictated by economic factors present within his trading area." (Italics supplied.)
 
 
 16
 Defendants would apply to their purpose Board of Trade v. United States, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918). In that case the court found that a rule of the Chicago Board of Trade had only a slight effect as a restriction upon free competition in the pricing of grain and, 246 U.S. at 240, 38 S.Ct. at 244, 62 L.Ed. 683, said that it "created a public market for grain `to arrive.'" It pointed out that it provided an improvement in actual market conditions in several specific ways and thus was promotive of competition rather than destructive thereof in its actual effect.
 
 
 17
 There is no evidence in this record showing that the net effect of the market hours restraint promotes competition. The opinion of the district court is devoid of any finding to that effect. On the contrary, the record shows that the effects of the restriction are wholly negative and destructive of competition. Even the district court expressly found that the restriction "obviously restrained a small segment of competition". We believe that the market hours restriction cannot come within the rule of reason announced in Chicago Board of Trade v. United States, supra. Moreover, a case concerned with the problems of a specialized commodity exchange and a rule thereof which was affirmatively found to have promoted competition is scarcely authority for upholding a restraint which seriously suppresses and interferes with competitive forces in a widespread retail marketing area. The district court's reliance on Chicago Board of Trade was, therefore, not justified.
 
 
 18
 In the case at bar, during oral argument, we were surprised by unions' counsel, who, while emotionally maintaining that union butchers should be given an opportunity to be with their children on Friday evenings, spurned a suggestion that other fathers in Chicago and its suburbs might desire to be at home with their children, while their wives took the family car to do their meat shopping on that evening. But defendants' counsel was positive that, in considering the application of the antitrust laws, the convenience and welfare of the public are irrelevant.
 
 
 19
 The evidence on remand supports the allegations of the complaint charging that the unions and the Associated Food Retailers of Greater Chicago, Inc., defendants, effectuated through a contract, an unreasonable restraint of trade. By detailed and persuasive evidence plaintiff has shown that, as a result, it has been injured in its business and property. The fact of defendants' unlawful restraint on interstate commerce is supported by convincing evidence.
 
 
 20
 As to the assertion that plaintiff is in pari delicto, we decided on the prior appeal, 274 F.2d 217, 223:
 
 
 21
 "Appellants next assert that plaintiff is without standing to sue because, as a party to the alleged illegal agreement it is in pari delicto. Appellants concede, however, that the in pari delicto defense does not apply where plaintiff's participation in the wrong alleged was induced by economic necessity, or where plaintiff's wrongful act is divorced from the illegal conspiracy, agreement or combination alleged in the complaint.
 
 
 22
 "* * * When a business organization is the victim of an illegal conspiracy between certain of its competitors and a labor union to restrain trade, the business organization is not required to fight the matter out by economic warfare thus subjecting its employees who are not members of the offending union, its customers, and its stockholders, to the losses, inconvenience and damages of a strike, all for the purpose of shielding itself from the in pari delicto stigma.
 
 
 23
 "In view of the factual situation which confronted plaintiff, the defense of in pari delicto is not available here. * * *"
 
 
 24
 We adhere to those views.
 
 
 25
 Plaintiff's complaint charged that defendants engaged in an unlawful combination and conspiracy to suppress competition among retail meat markets in the Chicago area and to prevent the sale of meat before 9 A.M. or after 6 P.M. Mondays through Saturdays.
 
 
 26
 In view of the facts in this case as shown by the evidence it is clear that plaintiff proved that the unions, Associated Food Retailers and Bromann, its secretary, entered into a combination or agreement, which constituted a conspiracy, as charged in the complaint. It was therefore illegal and void because violative of the Sherman Act. Allen Bradley Co. v. Local Union No. 3, supra; cf. United States v. Hutcheson, 312 U.S. 219, 232, 61 S.Ct. 463, 85 L.Ed. 788 (1941).
 
 
 27
 In Interstate Circuit, Inc. v. United States, 306 U.S. 208, 227, 59 S.Ct. 467, 474, 83 L.Ed. 610 (1939), the court said:
 
 
 28
 "* * * Acceptance by competitors, without previous agreement, of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce, is sufficient to establish an unlawful conspiracy under the Sherman Act. * * *"
 
 
 29
 In United Brotherhood of Carpenters, etc. v. United States, 330 U.S. 395, 67 S. Ct. 775, 91 L.Ed. 973 (1947), the court used the words "conspiracy" and "contract" interchangeably.
 
 
 30
 The district court in the case at bar found that "From 1957 Plaintiff sought exclusion of the restriction on night sales from the industry-wide contract, and the Defendant Local Unions resisted such exclusion. The rest of the Industry agreed with the Defendant Local Unions to continue the ban on night operations." (Italics supplied.)
 
 
 31
 The agreement between the unions and Associated Food Retailers is still operative as shown by their common defense in this case.[5] Whether it be called an agreement, a contract or a conspiracy, is immaterial.
 
 
 32
 For the reasons above stated, we reversed the judgment of the district court dismissing the case as to defendants Associated Food Retailers of Greater Chicago, Inc. and Charles H. Bromann, and the judgment of that court dismissing the case as to all other defendants therein, and we direct, in case No. 14119, that said case be remanded to the district court for such further proceedings as may be consistent with this opinion; and in case No. 14196 we direct that said case be remanded to the district court to enter a declaratory judgment and an injunction substantially as prayed in the complaint herein and to ascertain and award to plaintiff such monetary relief as may be appropriate under this court's opinion.
 
 
 33
 Reversed and remanded with directions.
 
 
 
 Notes:
 
 
 [1]
 274 F.2d 217 (7 Cir. 1960); cert. den., 362 U.S. 936, 80 S.Ct. 757, 4 L.Ed.2d 747
 
 
 [2]
 215 F.Supp. 837
 
 
 [3]
 Ibid. 215 F.Supp. 839
 
 
 [4]
 The district court summarily disposed of the effect on the public of evening shopping for fresh meat, by saying:
 "The only conceivable deleterious effect on the public from the restriction here is that those persons who find it more convenient to shop for meat at night are deprived of that convenience. * * *"
 
 
 [5]
 We granted Associated's motion that the Unions' brief stand as the brief of Associated and Bromann, its secretary
 Likewise, in our prior opinion, 274 F. 2d 217, 222, note 4, we said:
 "Associated and Bromann have entrusted their interests in the defense of this suit to counsel for the unions. They formally adopted by reference the latter's motions and briefs."