**SILVERCUP BAKERS, INC., Plaintiff,**

v.

**FINK BAKING CORP., et al., Defendants.**

**No. 67 Civ. 421.**

United States District Court
S. D. New York.

Sept. 15, 1967.

Charles H. Kellert, Goldstein, Judd & Gurfein, New York City, for plaintiff.

Bruce Simon, Cohen & Weiss, New York City, for Bakery Drivers Union Local 802, etc.

FRANKEL, District Judge.

This is a motion by a labor union and its officers to stay or dismiss a private antitrust suit on the ground that the controversy must be referred to an arbitrator. The movants are joined as defendants in the action with nine baking companies; all are charged with conspiring to eliminate the plaintiff as a competitor in the sale of bread and other baked goods to the restaurant and institutional trade. The union's role is alleged to have included, by agreement with plaintiff's competitors, a scheme (allegedly effectuated) to cause the mass resignation of plaintiff's employees. The motion to require arbitration has been argued (and opposed) with vigor and learning. But it lacks merit.

1. There is a threshold question as to the applicable agreement and arbitration

clause. The court finds it unnecessary to resolve this issue. Accepting the arbitration provision upon which the movants rely, their theory must be rejected.

■ 2. The arbitration provision thus treated as pertinent for purposes of this motion provides:

"(a) There shall be arbitration for all disputes which may arise between the parties hereto, except as provided in [two specified Articles]; except that the arbitrator shall have no power to alter, amend, revoke or suspend any of the provisions of this Agreement.

"(b) The matter in dispute shall be submitted to an arbitrator who shall be appointed by the New York State Board of Mediation at the request of either party. The decision of such arbitrator shall be final and binding upon the parties hereto.

"(c) Arbitration shall commence no later than 2 weeks after the dispute arises.

"(d) The Union shall have the right to strike in the event that the Employer fails to comply with the Arbitrator's award promptly."

The movants argue, correctly, that the quoted language is broad. And they urge, still correctly, that the agreement to arbitrate must be appraised in the context of the many recent decisions commanding that such undertakings be construed spaciously and hospitably, resolving doubts in favor of the arbitral tribunals chosen by the parties. E. g., United Steelworkers of American v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Beyond this, however, the argument for the motion veers sharply away from the premises on which the rules governing this subject have been fashioned.

■ When the Supreme Court and others following it have ordered that provisions for labor arbitration be liberally construed, the express and repeated starting point has been that such engagements are designed for the adjustment of "grievances"—i. e., claims that there have been violations of the collective agreement. See, e. g., United Steelworkers of America v. Warrior & Gulf Nav. Co., supra, 363 U.S. at 584, 80 S. Ct. 1347; Old Dutch Farms, Inc. v. Milk Drivers & Dairy Emp. Local Union, 359 F.2d 598, 602 (2d Cir. 1966). The many decisions confiding such controversies to privately selected arbitrators rather than courts have served in large measure to implement and elaborate the policy declared by Congress in Section 203(d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173(d), which says: "Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." See United Steelworkers of America v. American Mfg. Co., supra, 363 U.S. at 566, 80 S.Ct. at 1346. It is in the context of this policy, reflecting judgments upon the practices and expectations of those who negotiate and live with labor agreements, that arbitration has come to be viewed as "part and parcel of the collective bargaining process itself." United Steelworkers of America v. Warrior & Gulf Nav. Co., supra, 363 U.S. at 578, 80 S.Ct. at 1351.

■ Running through the cases is the basic assumption, rested upon the familiar law and facts of the collective relationship, that the substantive concerns and jurisdictional mandate of the arbitrator are measured ultimately by the collective agreement. See, e. g., United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597–599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). To be sure, the arbitrator's province is not to be defined by reading the contract with narrow literalism. For the collective agreement "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." United

Steelworkers of America v. Warrior & Gulf Nav. Co., supra, at 578, 80 S.Ct. at 1351. In administering that "code," the arbitrator evolves "the common law of a particular industry or of a particular plant." Id. at 579, 80 S.Ct. at 1351. "The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." Id. at 581, 80 S.Ct. at 1352.

The illustrative quotations in the preceding paragraph, like all the precedents the movants invoke, are addressed to the multifarious kinds of disputes (grievances) that arise from, center upon, or are at least colorably referable to the substantive terms of the collective agreement. It is for disputes of this kind that the parties to such agreements choose arbitrators rather than courts. It is in the context of this agreed preference that the Supreme Court has ordered a presumption strongly favoring arbitration. In the collectively bargained scheme of "industrial self-government" (United Steelworkers of America v. Warrior & Gulf Nav. Co., supra, 363 U.S. at 580, 80 S.Ct. 1347), with its specialized problems and attendant corps of presumably expert arbitrators, the arbitral process has won a preferred place (subject to the parties' agreement, of course) over the generalist facilities of the courts. This is the setting in which the highest Court has said (id. at 581, 80 S.Ct. at 1352): "The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts." This is also the setting in which the parties now before the court must be supposed to have written their arbitration clause.

Ignoring the context that makes words manageable and finite, the movants would read the provision for arbitration of "all disputes" with heroically literal sweep. They would apply it now to a claim wholly unrelated to the agreement, a claim which has nothing to do with "the common law" of the plant or industry and is in no remote sense affected by the "meaning and content" of the collectively bargained "code."[1] The argument is that the reference to "all disputes" was meant to exclude the federal courts from their "normal" and exclusive role under the antitrust laws and to refer such matters to the highly abnormal (i. e., evidently unprecedented for this purpose) procedure of labor arbitration.

■■ 3. It is arguable, and plaintiff has argued, that an agreement requiring arbitration of private antitrust claims would be unenforceable in any event. Cf. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Fanchon & Marco, Inc. v. Paramount Pictures, 107 F.Supp. 532, 548 (S.D.N.Y. 1952), rev'd on other grounds, 202 F.2d 731, 36 A.L.R.2d 1336 (2d Cir. 1953). Suits of this kind are designed to further broad public interests transcending the

1. Responding to the pressures of oral argument, counsel for the movants suggested that all manner of torts would be exclusively for the arbitrator. On the other hand, counsel urges the alternative thesis that plaintiff's suit is really "contractual" because in scheming with plaintiff's competitors for a mass resignation of plaintiff's employees "the Union would be violating its entire contractual commitment * * * by participating in the destruction of the underlying business subject matter of its agreements covering such employees." Reply Memorandum, pp. 3–4. The same unavailing contention would apparently cover all manner of destructive actions by the union—burning down the plant, assaulting management people, etc. The sufficient answer is that the alleged conspiracy with competitors is laid solely under the antitrust laws, with no reliance of any kind upon the contract. There is no need to consider how the case might stand if the complaint alleged unlawful conduct by the union alone, cf. Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945), although it is clear even in such a case that a charge sounding exclusively in tort would normally be for the courts rather than arbitrators. Old Dutch Farms, Inc. v. Milk Drivers & Dairy Emp. Local Union, 359 F.2d 598 (2d Cir. 1966).

private objectives of the parties. See, e. g., Minnesota Mining & Mfg. Co. v. N. J. Wood Finishing Co., 381 U.S. 311, 318, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965); Lawlor v. National Screen Service, 349 U.S. 322, 329, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); Monarch Life Ins. Co. v. Loyal Protective Life Ins. Co., 326 F.2d 841, 846 n. 2 (2d Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964). Trial by jury, not by arbitrators expert in other things, is "an essential part of the congressional plan for making competition rather than monopoly the rule of trade * * *." Beacon Theatres Inc. v. Westover, 359 U.S. 500, 504, 79 S.Ct. 948, 953, 3 L.Ed.2d 988 (1959). The deterrent of treble damages is an integral feature of the scheme of judicial enforcement; it is at least questionable whether Congress could have wanted this open to revision through the largely unreviewable power of arbitrators over questions of substantive right and remedy within their domain.

One further factor weighs generally against the displacement of courts by labor arbitrators for deciding antitrust suits. In the likely run of cases, as in this one, the union charged with restraints of trade is allegedly in league with business groups. Cf. Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945); United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941). It would be at least a burdensome incongruity to hold that a plaintiff seeking redress for such wrongs must litigate the same charges twice, once before an arbitrator and again in court.

But however persuasive the point may seem, there is no need in this case to conclude generally that an employer and un-

ion could never bind themselves effectively to try antitrust claims before an arbitrator. It is enough for now to follow the directly apposite authority of Old Dutch Farms, Inc. v. Milk Drivers & Dairy Emp. Local Union, supra, holding "that absent a clear, explicit statement in the collective bargaining contract directing an arbitrator to hear and determine the validity of tort damage claims by one party against another, it must be assumed that the employer did not intend to forego his rights * * * and that the parties did not intend to withdraw such disputes from judicial scrutiny." 359 F.2d at 603.[2] The motion in this case plainly fails that test.

■ 4. While the clause here in question begins by prescribing "arbitration for all disputes," its details go far to negate—and they certainly include no "clear, explicit statement" to affirm—an agreement to arbitrate antitrust claims. In fairly standard terms, subparagraph "(a)" withholds from the arbitrator any "power to alter, amend, revoke or suspend any of the provisions of [the] Agreement." This is a small and negative thing in itself. But it implies to some degree the usual understanding that the arbitrator is to interpret and follow the agreement.

Subparagraph "(b)" provides for appointment of the arbitrator by the New York State Board of Mediation, an agency constituted for the "settlement of labor disputes" (N.Y. Labor Law, McKinney's Consol.Laws, c. 31, § 750) by such efforts as mediating "grievances and differences" and rendering assistance "in negotiating and drafting agreements for the adjustment in settlement of such grievances and differences and for the termination or avoidance * * * of

2. The movants have devoted some of their extensive briefs to the contention that the arbitration clause here is broader than the one in *Old Dutch Farms*. The point is not a large one. The clauses are the same in that both lack anything like the kind of "clear, explicit statement" required by the opinion of the Court of Appeals. Moreover, the present case is in a sense stronger against arbitration

than *Old Dutch Farms*. The dispute there arose from an alleged secondary boycott, claimed to have been in violation of Section 303 of the Labor Management Relations Act, 29 U.S.C. § 187, a statute supposedly within the expert ken of a labor arbitrator. That sort of argument, whatever it may be worth, is not available with respect to the Sherman and Clayton Acts.

the existing or threatened labor dispute" (id. § 753). The reference to the Mediation Board fits comfortably into the usual system of contract grievance arbitration. It does not fit at all with a purpose to arbitrate non-contractual disputes as far removed from the province of the State Mediation Board as plaintiff's antitrust suit.

A further item of present interest is the requirement in subparagraph "(c)" of the arbitration provision that arbitration "shall commence no later than 2 weeks after the dispute arises." The idea may stir wistful thoughts in courts stretched by protracted cases, but it is ludicrous to suppose that lawyers contemplating antitrust litigation could have contracted for such a schedule.

In short, after the reference to "all disputes," the arbitration clause points away from, not toward, the expansive construction for which the movants argue. It is pertinent to note that this same union, dealing with essentially the same arbitration agreement,[3] argued only recently that the phrase "all disputes" should not be read to include a "dispute" over a question of arbitrability. Strauss v. Silvercup Bakers, Inc., 353 F.2d 555 (2d Cir. 1965). To be sure, such a question is normally for the courts "unless the contract clearly manifests an intention that arbitrability should be decided by the arbitrator." Id. at 557. But at least the same type of clear manifestation would be required to vindicate the

union's somewhat inconsistent position here. Indeed, agreements empowering an arbitrator to decide arbitrability are by no means so extraordinary as the one movants claim now to have made.[4]

The motion is denied. So ordered.

---

3. The pertinent difference, critical in the union's present view, is that subparagraph "(a)" did not contain then the two exceptions, naming two substantive articles of the contract, which are now specified. The difference is of no consequence. Whether arbitration is for *all* contract disputes or almost all sheds no light aiding the union on whether the arbitration was intended for a claim which "is in no way based on an alleged breach of contract and neither invokes nor needs to invoke the contract." Old Dutch Farms, supra, 359 F.2d at 601.

4. In Strauss v. Silvercup Bakers, Inc., supra, it was held that the exclusionary clause in issue was sufficiently ambigu-

ous to warrant the reception of proof "relevant to the intentions of the parties at the time they drafted their agreement." Id. at 558. Evidently seeking to propose a similar course in this case, the movants have filed affidavits with their motion. However, accepting everything they say, it amounts only to the fact that there was no talk in drafting the arbitration clause of any exceptions other than the two concerning named provisions of the contract. See note 3, supra. There is no faint suggestion, let alone a "clear * * * statement," that it was intended affirmatively to *include* non-contractual claims of the kind here in issue. There would appear, therefore, to be no occasion for an evidentiary hearing.